Councilor John. It please the court. Josh Dixon, Center for American Liberty, on behalf of appellant Aurora Regino. I'd like to reserve four minutes, please. All right, please watch your clock. Thank you, Honor. Parental rights case law reflects one enduring principle. The best way to protect children from harm is to give their parents broad authority over them. Children are immature and make rash decisions, while parents are presumed to be fit and to act in their children's best interests. The parental right is not absolute, of course, but the state's efforts to regulate the family must honor these presumptions of parental fitness and affection. The parental secrecy policy violates the parental right for four reasons. First, the complaint plausibly alleges social transitioning is a significant form of mental health care treatment with serious potential consequences, and schools may not provide it to children without parental consent absent exigent circumstances. Second, the complaint plausibly alleges the decision to socially transition a child goes to the heart of parental decision making, and schools may not make this decision based solely on the child's request. Third, the decision to socially transitioning children in secret from their parents cuts deep into the fabric of the family, driving a wedge between parents and their children just when the children need it the most. And fourth, the complaint plausibly alleges the policy fails to provide parents the most basic procedural safeguards before socially transitioning their children. Counsel, several of your counts are facial challenges. Yes, Your Honor. And I have a hard time seeing how, even if the policy is what you say it is, that it would be unconstitutional in every possible circumstance or application, such as, for example, a circumstance where a child told the school that if my like they have before. So explain to me how the say, for example, for your substantive due process claim that the policy again, even if it is what you say it is, is unconstitutional in every application. As this court held in the Lopez Valenzuela case, the fact that a statute could conceivably or a state action could conceivably be done consistent with the Constitution does not preclude a facial challenge when the policy itself fails to provide procedural safeguards to protect that right. So, for example, even in the situation where a parent, the child says the parent is going to abuse them, the parent is entitled to an adjudication of that fact. And so the way that this should go forward is that allegation is made to CPS. CPS investigates and evaluates whether or not, in fact, the parent is fit or whether the parent would cause the child harm. But simply the school relying on the child's allegation does not give the adjudicative process a chance to play out. So in every case, the policy may not be applied constitutionally, even though there may be some situations where parental consent can be with the policy. Is this case moot as applied to your particular plaintiff? I mean, given that the child has determined that they are not transgender, and the policy isn't applying at all to the child, why isn't this case moot? I don't think it's quite an accurate characterization to say the child has determined the child is not transgender. Well, didn't the child say never mind after a certain period of time, I thought maybe I was actually transgendering, but now, and we're talking about what, an eight-year-old, a fifth-grader. So we're talking about... Correct. The child has presently desisted from the transgender identity. But I mean, how is this capable of repeating itself? And what's your argument that this case isn't moot? Right. So the child has desisted from the transgender identity for now. The child is still dealing with the underlying conditions that cause the transgender... By the way, doesn't the parent know now? I mean, whatever the child is dealing with, isn't the parent well aware of it? The parent does not know at this, as we stand here right now, the parent does not know whether the child is being socially transitioned at school. That's another issue. And the policy is just to accede to the child's wishes and not do anything else. What is the school of doing? The social transitioning is when the school creates the environment for the child under which the child is affirmed. Affirmation... Is that the policy? That is... What is the precise contours of the policy here? Because I think there's some argument that it's actually psychiatric or psychological treatment versus just being neutral. So we have three different theories. The first, I believe Your Honor is getting at, is that social transitioning constitutes a form of psychological treatment. And I would analogize the situation to an Alcoholics Anonymous meeting. Could I interrupt here, just to make sure I'm understanding your answer to Judge Wardlaw's question. When you use social transitioning, I think, in your briefing, pretty much you're talking about calling a child by a different name at his or her That's correct. That's it? For purposes of this answer? For purposes of... Yes, that's what happened to the child at this, in this situation. Wait, I'm sorry. Does it include telling the rest of the faculty? For purposes of what we're talking about right now? Yes. So the policy provides that when a student asked to go by a new name and pronoun, that the disinformation will be shared with the school. Administrators, other students must refer to that child by the new name and pronoun. Okay, thank you. But I didn't mean to deter you from answering Judge Wardlaw's question. Right. So it is that creation of the environment, kind of like an AA meeting. When someone goes to an AA meeting, recognize treatment for alcoholism. There's a circle, people share their stories. I wouldn't say that individuals in the circle are, quote, providing treatment, but it is the creation of this environment that provides the treatment. In the school setting, it is the creation of this environment where the affirmation is affirmed. The affirmational model of treatment is one of two models of treatment, the other primary one being watchful waiting. Watchful waiting, in essence, acknowledges that the vast majority of children who experience a transgender identity will grow out of it by the time they're adults. We don't really know why, but we know that that is the case. There are 11 studies that establish it. Affirmation is a different paradigm. Rather than watchful waiting to see if the child grows out of it, takes the affirmative step of affirming the child's identity for the purpose of potentially relieving the psychological distress associated with having a transgender identity. Now, the district argues that all this is is mere acknowledgment of who the child is. That may very well be true for adults, excuse me, but it is not the case in children. Children's identity, gender identity is not fixed. Again, most of the children's gender identity grow out of it. And so, when you introduce social transitioning, the numbers flip-flop. Most children absent social transitioning grow out with social transitioning do not. So, it changes outcomes. Your briefing makes this point, and I think what you're implying in your briefing is that there's causation as opposed to correlation, and that's your assertion, and we don't have any findings, right? We don't have any findings at this point about whether that is really borne out, but I think your client's position is that is a harm because there's a, you know, from this policy, because there's a lost opportunity. That's my paraphrase of her position. Is that correct? Well, two responses. Number one, you're absolutely right. There's no evidence. We're at the Rule 12 v. 6 stage, and so the court must take our allegations as true. We have alleged what I just said, in essence. The second response is that, yes, it is causative. It changes outcomes, and so rather than just acknowledging... Again, that's your assertion. I just wanted to make sure I understand your theory. Correct. Yes, Your Honor, that's the theory. So, counsel, could you explain to me the difference between your substantive due process claim, which I think I understand, and your First Amendment claim, that what would be part of your First Amendment claim that isn't part of, for example, your in and as applied challenge? I would say, with respect to both as applied and facial, it's our reading of the Keats case that the First Amendment, it completely overlaps with substantive due process in this scenario. Keats describes the right as an associational right, and while other Ninth Circuit cases discussing various aspects of the parental right, like the Keats case, specifically invoke the First Amendment, they do invoke the concept of an associational right. So, it is our interpretation of the Keats case, the Mann case, the Wallace case, that the two rights are perfectly coextensive. So, there's nothing vis-a-vis, in your view, a First Amendment claim that you... Nothing extra that you would need to prove to succeed on a First Amendment claim that you wouldn't need to prove to succeed on a substantive due process claim? Do I have that right? I believe so, Your Honor. All right. Thank you. I'd like to ask you to help me understand more about your assertion that your client's position is not that her parental rights are unlimited. I think you said as much, but I'm not sure where you draw the line there, and that's why I asked you to help me out with where in the process you, or what you include in social transitioning. So, what I mean by that is if a child, just a hypothetical child, goes to the school counselor and reveals that, I think in this case, the allegation is that she felt like a boy and wanted to be known by a different name, and if it didn't go any farther and she didn't give the counselor permission to share that more broadly in the school, at that point anyway, is it your client's position that there should be a duty to inform her of that? No, Your Honor. It is our contention that it is the creation of the environment, and so the state in its briefing... I'm sorry, Your Honor. So, hold on. Just to make sure that I understand you. So, what your contention is that what triggers the parent's right, and I guess the school's obligation to notify the parent, is the decision for the counselor to tell the faculty, please call this student by this name and use these pronouns. Is that it? Yes, Your Honor. If the child just relays to a counselor, a teacher, whatever, I think I'm transgender, and the conversation ends there. There's no duty to disclose at that point. It is when the school goes further and takes the affirmative step of creating this environment for the child that the constitution is offended. Well, in your as-applied challenge, you are also alleging other facts with regard to what happened to this child that you say triggers the duty as well, right? Including the conversations as to possible surgery or other things. Do I have that right, or is that not part? That's not part of the case. It happened, and so it's alleged. But the claim, and to get back to Judge Wardlaw's question about mootness, our claim is a prospective relief claim only. And so, any facts that happen in this particular situation that go beyond what the policy calls for are really ancillary to the claim. But it's not the case that you're suggesting that the... Apart from... I think we all understand there's mandatory reporting provisions where even though a child thinks he or she is having a confidential conversation, their educators have an obligation to report certain harms. I'm setting that aside for purposes of this inquiry. It sounds like you're not alleging or asserting that the parent has a right to invade what I'm thinking of as a confidential therapeutic relationship, meaning, you know, the child counselor relationship. That's... As a general matter, that's correct. Okay. All right. So, you know, just adding some facts to what you're saying, for example, in something that, sadly, is not a made-up type of hypothetical in general, like if a child told a counselor, I'm being sexually abused by a relative or something like that, including a parent, that nothing about your claim suggests that the particular parent or a parent has a right immediately to know that. Absolutely not. No, that's... I'm sorry. That's absolutely correct. It is only when the school takes the affirmative step to, again, create this environment, provide the treatment to the child that the duty is triggered. The state, in its brief, has this argument that if our position is accepted, the school will be required to report to parents when it sees two boys hugging in the hallway. It's a ridiculous argument. That's a straw man. We're not contending that any... Even direct knowledge that the child is identifying as LGBT, whatever the case may be, much less the suspicion. What about the child's rights here? Doesn't the child have some rights when the school asks the child, can we please talk to your parents about this? And the child says no. The district invokes what it claims is an informational privacy right that it asserts children have against their parents to keep the fact that the school is secretly socially transitioning them. There is no warrant in the case law for creating this informational privacy right against students or against parents, I should say. Our briefing explains all the reasons why, but I just wanna hit the high point. Can I just stop you there? Because I think we've just explored, admittedly, a very extreme area and one that doesn't apply to this case, where child is really reporting a colorable, concerning history of harm. And then to follow up on Judge Bennett's question... Would be nice if you could let him answer my question before you interrupt. Judge Kristen, please would you answer my question? What about the child's rights? Yes, Your Honor, the district invokes children's informational privacy rights. In this setting, there is no informational privacy right. Top line argument, schools conduct social transitioning throughout the school environment, in the classroom, in the hallways, at recess, throughout the school environment. There is no reasonable expectation of privacy that a child has in things that go on throughout the school environment against their parents. There is not a circuit court in the country that has ever held that children have informational privacy rights against their parents in anything. The Bolotti line of cases, the abortion cases, put those aside. Not a single court in the country has held that children have an informational privacy right against their parents. And the consequences of that holding would be horrific on parent child relationships. What does that mean exactly? If a child goes in... The other practical... There's a couple practical things about that, though. Wouldn't the parent... I mean, the parent has its own relationship with the child. Wouldn't the parent be able to observe on its own that there's something different about the child and what's going on? And if, in fact, the school is creating an affirming environment, don't you think other kids and other parents would know about that? I mean, isn't that something that would otherwise be public and come to the attention of the parent? I mean, what I'm saying is, why impose this duty on the school? Well, here the... I mean, the parent only learned because the child eventually told the grandparent. I mean, there's no obvious perception that parents would have that a child is being socially transitioned at school. There's not like an obvious marker that a parent could look at and say, oh, my child is transgender or whatever the case may be. I mean, I think that the problem with the informational privacy argument, again, no reasonable expectation of privacy, but the bigger point is that children... I mean, parents have to know what's happening at school in order to guide and direct their children. There's no warrant for creating this informational privacy right that impedes the parent child relationship. So far as we can tell, and the district has cited only one case, there's precisely one case that holds that there is an informational privacy right, and that's the Nuwan case out of the Central District of California. It's terribly reasoned, the decision is. It doesn't look at the history and tradition of parental control over children in this country. It cited to Sterling, which is a Third Circuit case, which involved an 18 year old, not a minor. So counsel, even if theoretically there could be an informational privacy right for a child, as I understand it, there's... And I'm gonna ask your friends, but there's nothing that I see in this policy, at least as written on ER 98 and 99, that distinguishes between a six year old child who's in kindergarten and a 17 year old child who's in 11th grade. So, first, do I have that wrong? That is my understanding. And so I could see circumstances where, for example, a 17 year old, with regard to birth control or abortion or other intimate privacy matters, could have, in some factual circumstances, a right to informational privacy. But do you think we're called upon, in this case, to decide that there is no child that has any right to informational privacy, irrespective of their age and the circumstances? No, not at all, Your Honor. This case presents one question, social transitioning. Does the child have the right to be socially transitioned at school without their parents involved? These other issues about abortion or whatever the case may be, they're not pertinent here. So you're not asking us to decide there's never a right to informational privacy ever for any minor who's a student? That is absolutely correct. We are not asking for that ruling. We're asking for the ruling on the specific facts of the case here. You argued that the district court erred, and is right at the gate, I think, because of the failure to have clearly established Supreme Court authority that goes to right to the specific right that is asserted here. So if we agree with that, other than I know you're going to say you would like the case to be remanded, what direction should we give to the district court on remand? Well, I would like a ruling that the First Amendment and substantive due process clause are coextensive in this context, and that we don't have to look at a large line of cases to get there. Well, here's the problem. It seems to me the policy is not... The way you describe it, and I think correctly, is that it's not neutral. It favors the child's invocation of a right to privacy, but it's also not unlimited. There's a procedural mechanism built into the policy if there's compelling circumstances that are shown, and both sides allege that there are harms that could result. Your client has certainly alleged that it's harmful to the parent child relationship if the information is kept private, and the opposing party, and of course, we have on both sides the benefit of lots of amicus briefing that goes the other way. Some children, at least, could be really harmed in the alternative. So what we don't have is any factual development about whether the evidence can bear out either one of those conditions. Exactly, exactly. And that's why we're here. We have alleged a set of circumstances that gives rise to a cause of action. The other side has attempted to refute that. This is 12B6. This is not the time or place for that. Right. So go back to my question, if you would, please. I keep trying to get to it. If we were to remand this case, what direction should we give to the district court? I see my time. May I respond? Yes, you. Of course, you can answer the question. I think the response... The guidance would be a holding that these allegations that we have alleged state a viable claim. It is for the district court, upon remand, to assess the evidence in a way and determine whether or not, as a factual matter, we have alleged or we have proven the four theories that we have alleged. But as far as giving guidance, I think that this court can create a great deal of clarity in the law by a holding that we have alleged, plausibly so, the four theories of relief that we have solved. But one of your theories is dependent upon this baked in fact finding that there weren't compelling circumstances here. I think you've conceded that there are some circumstances where a child could raise this concern and there would not be a need to notify the parent, at least not directly. That's right. But from a procedural due process perspective, that's really where the deficient fact finding comes in. Parents are entitled to notice and an opportunity to be heard at the moment the school decides to socially transition the child. And so, because the school is doing that without even notifying the parents, much less giving them an opportunity to be heard, they're violating the procedural due process clause. So we have alleged the existence of a triggering right, triggering liberty interest. That implicates the procedural due process clause. It is the failure to provide notice and an opportunity to be heard. That constitutes the procedural violation. Thank you, Counsel. Thank you, Your Honors. Would you want to reserve the remainder of your time? Four minutes, please. Well, you have two minutes. Thank you, Your Honor. Yeah. You're Johnson. Yes, Your Honor. Okay. You know, you're arguing on behalf of Kelly Staley. I am, Your Honor. All right. You may proceed. Thank you, Your Honor. Based upon the argument that Appellant has provided this morning, it appears that Appellant has significantly narrowed the arguments from which they're relying upon. Throughout the course of this litigation, they've raised several, several arguments. But based upon what they now allege in their oral argument, what triggers allegedly the right of parents to notice is only the acceptance of the pronouns, the acceptance of the names, the acceptance of the creation of this environment in which the school is accommodating the new transgender names and pronouns. So what it appears, Your Honor, to be is that based upon this oral argument, Appellant is really just narrowing their argument to their treatment, their treatment analysis, being that we believe, or this is Appellant talking, Appellant believes that accommodating the new pronouns, accommodating the new names in some way, shape or form constitutes a right. And it is that treatment, that alleged treatment, which then allegedly necessarily triggers the need for notice and consent of the parent. Well, counsel, I'm not sure I agree with you as to what your friend's argument is. But putting that aside, the way I read the policy on ER 98 and 99, and correct me if I'm wrong, that first of all, it applies by its terms to any student irrespective of age. There's no age limiting factors in the policy itself. Am I correct? So that's partially correct, Your Honor, in that, yes, any student can trigger AR 5145.3 by saying, hey, I feel I'm transgender and I would like new names and pronouns. And then the starting point for this, if I recall, as I read it, is that subject to Part 2, the information can only be disclosed with the student's prior written consent. And again, that applies whether the student is six and in kindergarten or 17 and in 11th grade by its terms. Yes? That's partially accurate, Your Honor, because also by its terms, the decision of the minor is subject to adult review, subject to discipline. Right. But Part 1 applies no matter what, how old the child is. That is correct, Your Honor. And then there can be disclosure only when the, if there's not the written consent, there's compelling evidence that disclosure is necessary to preserve the student's physical or mental well being. So putting aside the required by law part, like if there's an assault involved or something like that, but putting aside that, the only thing that triggers it is when the district has compelling evidence that disclosure is necessary to preserve the student's physical or mental well being. Do I have that right also? That is correct, Your Honor. Okay. Thank you. Okay. So returning to the treatment argument, the argument that it is a treatment and therefore because it is a treatment, parents are necessarily entitled to notice and consent. He's arguing that social transitioning is a treatment and that exceeding to the child's wishes is equal social transitioning. And we know that that is not accurate, Your Honor. And we know that based upon the Karnosky case, which is a Ninth Circuit case that the California Department of Education speaks about in its briefing. We know that that's not the case from the Grimm Fourth Circuit case, which we, the district, uses in its briefing. And we know that's not it because we know what social transitioning is. We know what it is not. Social transitioning is not an external, a third party doing something to a transgender person. We know through these cases, Karnosky and Grimm, what social transitioning is. It's the internal decision of the transgender person themselves to start living a lifestyle through dress, through pronouns, through names, what have you. It is the internal decision of the transgender person itself to start living a lifestyle more akin to or more attuned to their gender identity and a less attuned to their sex assigned at birth. It is not an external third party. It's not something the district is doing to the transgender person. It's the decision of the transgender person itself. What the district is doing is called accommodation. And again, accommodation, whether the student is 17 or seven. The policy requires that accommodation, whether the student is seven, or I believe in this case, 11 or 12, I might have that wrong, or 17, yes? Subject to the review of an adult surrogate. Yes, Your Honor. It's subject to the compelling evidence that disclosure is necessary for the well-being of the child. Correct. And obviously, the child's age would be a factor in coming to that determination or not. So- Counselor, my question is why is it, I think it has to be your position that they haven't even plausibly alleged that this is treatment. That's correct. Based upon Karnosky, based upon Grimm, it is not. And because it is, you know, and right there, just that, you know, you don't get to step two regarding notice because they fail at step one. This is not treatment. We know what treatment is. The Shanks case out of the Seventh Circuit tells us what treatment is. Treatment is an act of a third person attempting to cure a malady. And we know from Grimm, and we know from Karnosky, that simply being transgender in and of itself is not a malady. It's not an ailment. What is an ailment, what is a malady, is gender dysphoria. What gender dysphoria is that some, not all, but some transgender persons suffer emotional distress due to the non-congruence between their gender identity and their sex assigned at birth. The reason that difference between being transgender and gender dysphoria is critical is because of what triggers AR5145.3. AR5145.3 is triggered by someone simply being transgender. It is not triggered by someone being, having gender dysphoria. It is triggered by the, by something that is not a malady. It is triggered by something that, by, by being transgender. Now, what, now if AR5145.3, if it was triggered by someone with gender dysphoria, right, if, if, if the regulation says something to the effect of, if you have gender dysphoria, then we will accept your pronouns. Well, then maybe there's an argument that it's treatment, but that's not what the case is. What 5145.3 is, is if you are transgender, period, regardless of any ailment, we will accept your pronouns, we will accept your names. And because the triggering event is not an ailment, it's not an attempt to remedy a malady, there is no treatment. And you don't even get to the step of notice because there's no treatment in and of itself. So setting aside the treatment label or conclusion, they've alleged that having this secret kept from the parent can drive a wedge between the parent-child relationship, and you think that is not plausibly alleged here? No, Your Honor, because that's the decision of the student. It's the, the student who has decided to keep this secret from their parent. What AR 5145.3 does is simply maintain the status quo, a status quo that has been created by the student. Oh, wait, wait, wait. I'm sorry. Let me, I need to push back on that a minute as to maintain the status quo. It may well maintain the status quo of the parent knowing, but it doesn't maintain the status quo of how the parent's child is going to be treated at school, and so, in your view, the latter is irrelevant to the constitutional claim? In terms of the associate, I mean, so in terms of, and this is what I understand Judge Christian's question to be, and I apologize if I misunderstood it, but what I understood her question to be is, is does keeping the secret, does the school keeping the secret drive a wedge, does it somehow affect the relationship between the child and the parent? And it's the district's position that maintaining the status quo does not intrude upon, does not affect the parent-child relationship because it's the child who has made the decision to keep the secret, it is not the district who has made that decision. The district is simply maintaining the status quo. It's up to the child to decide whether or not they want to diverge that private confidential information to their parent. But again, in your view, in the district's view, the status quo is simply the parent's knowledge of the child's position. The status quo is not now everybody at the school, all of the teachers are going to be addressing the child by their preferred pronouns. That, that's not changing the status quo in a constitutionally relevant sense vis-a-vis the parent's constitutional rights? That, that would be accurate, Your Honor, because the student, as we put in our, in our briefing, has an informational right to privacy. And we also know from the non-case, which is based upon United States Supreme Court precedent, it is the student who gets to choose with whom they share that private information with. A student has the right to share their transgender status with the school and the people of the school, while at the same time maintaining the secrecy of that information from their parents and from, and from the public at large. And that is a based upon a jurisprudence from the United States Supreme Court with regard to criminal rap sheets and whatnot, just because a section or a small sliver of society happens to know these, these, these conf, this confidential information, doesn't take away the right from that person to continue to withhold that in, that confidential information. And again, I, I, and I, I apologize for repeating my question, but I want to tie it to the point you just made, that your point in the district's view is true, whether the child is 6, 11, or 17. That, that would be correct, Your Honor. Again, the decision of the child is subject to adult, an adult surrogate review. It's not that a 6-year-old is simply coming up and saying, this is what I want to do, and the district, you know, without reviewing the situation says, okay, it's just like in the abortion context where minors, when a minor has decided they want an abortion, it's subject to the adult surrogate, it's subject to the review of the doctor. In this case, it would be subject to the review of the district personnel to decide if, in fact, maintaining the privacy of that information from the parents is in the best interest of the child, or whether it would constitute potential harm to that child. Okay. I'd like to ask a few questions related to the fundamental right aspect and, and the standards that we apply to this. First of all, do you agree that we should be analyzing the substantive due standard as opposed to Shocks the Conscience standard? I think you, so I think the Ninth Circuit is clear in that you have to have both a fundamental right and a Shocks the Conscience, that's the both language that we cite in our, that we cite in our briefing. You have to have both. One, you have to have a government action that, you know, that touches upon a executive has to, in addition to that Shock the Conscience. So I think both analyses come into play here. Well, if, if, if we look at the, if we assume that Geno has a fundamental right, parental right to know, to be notified by the school, what's the substantial government interest that exists to override that right? Well, Your Honor, I would push back on the parental right for notification because when you look at Pierce, when you look at Meyer, where you look at what, you know, those cases that have developed the parental right and what the scope of the parental right is, the United States Supreme Court laid it out in Truxell. The right of parents through the due process cause is limited to quote unquote, making decisions. It's limited to the decision making process. That just, and I, and I, and I emphasize the word... We could look at it that way. We could look at it that, that it should be the parent's right to decide whether their child is going to be referred to by different pronouns or, or the pronouns that the child desires or have access to alternative bathrooms, that it should be the parent that gets to decide to accommodate the child, not the school. So if we look at it that way, what's the, the government's substantial interest in withholding the information and withholding that decision making from the parent? Well, again, the, so the interest of the government is accommodating the informational privacy rights of the child, where the child says, these are my, these, this is my constitutionally protected information and I want to maintain it private from third parties, including my parents. It is the interest of the state to maintain that privacy. Cause there's two, there's two sides of the coin to the right of privacy. One is, and they talk about this in Volati, but one is the right not to have the state snooping into your own business. That's one side of the coin. The other side of the coin is when the state has private information through legitimate means, has private information of a citizen, that citizen has the right to make sure that the state maintains the confidence of that information and does not divulge that information to third parties without their consent. So it is that right of privacy and maintain the privacy rights of its students concerning their transgender status. That is the, that is the interest of the state in maintaining its privacy. Having said that, I do, I would like to finish my time with focusing on what is the scope of parental rights as set forth by this court in infields, as well as by the Supreme Court, because again, there's a difference between the right to decide, the right to make decisions, which is what the United States Supreme Court and this court has recognized and this additional right which appellants are now seeking, and that is the right to, after making their choice, after making their decision, to then be able to go to the state and compel state action to accommodate those choices. And I use the word accommodate because that's the word that this, this court used in the fields case. And there's a dichotomy between the actual right to decide and the would be right to accommodation, which this court and the United States Supreme Court has rejected time and time again over the past 20 years. For example, in the in the fields case, what you had was you had a group of parents say, hey, we have decided based upon our right to decide, we've raised our children in a universe where sex doesn't exist. We don't talk about sex, sex isn't a topic, et cetera. And because of that, because we've made that right to decide, we should additionally have the right to compel the state in how it educates our educates our students and making sure that they don't educate them regarding sex, because otherwise that would be undermining our right of choice. And this court in field said, no, that you do not get that second right. You have the right to decide, but you do not have the right to state accommodation. Specifically, this court said that the parental right, quote unquote, does not extend beyond the threshold of the school door. And the court has repeated that line over and over again, specifically in Parents for Privacy v. Barr, California Parents v. Torlakson and a host of other cases, every time repeating that sentence that, quote unquote, does not extend beyond the threshold of the school door. And that is I mean, so what this case is, what this case is where appellant again, as other parents have done before in seeking a second right of accommodation in this in this case, compelling the state to disclose private information to them. This is no different than the Fields case, and this is no different than the Parents for Privacy case, and this is no different than the California Parents case. There is no right to state compelled accommodation. The parental right is limited only in the educational context. The parental right is limited only to the decision of whether or not to send their children to public or private school. And the Supreme Court has said as much in the Runyon case recently. It talked about Pierce. It said Pierce is limited to its facts and no more. That's a quote and no more. There is no right to accommodation. There is no right to compel the state to act to accommodate parental decisions. It's only the right to decide and nothing else. And having said that, I see I only have approximately a minute left. If the court has any questions, I'd be happy to answer them. Otherwise, we will submit. Any further questions? No. Okay. Thank you, counsel. Thank you, Your Honor. We'll hear from Ms. Dalby. Ms. Dalby. Good morning, Your Honors. Julie Vera for the state of California. Thank you for allowing us to participate in today's argument. The state is here because we believe it's critical that schools be able to create safe and supportive learning environments for all our students, including transgender and gender nonconforming students. This court recognized the importance of that interest in parents for privacy, and it that while parents have a substantive due process right to choose their child's educational forum, they do not have a due process right to override their chosen school's policies, administration, or curriculum. Plaintiff ignores that precedent. She claims that substantive due process empowers parents to compel schools to abandon their anti-discrimination objectives and to harm transgender students by forcibly outing and misgendering them. This court should affirm the dismissal of plaintiff's claims. I welcome the court's questions. It just seems to me, and this is a refrain that I've been advancing, I think, all morning, that both sides are alleging that harms can result to the child, sort of either way. And the policy is not absolute, but it is also not neutral. And we don't have any findings about whether the evidence, we have a lot of amicus briefs from a lot of professionals in this area. Of course, we're just generalists, just judges. And I don't know whether any of those asserted harms are supported by the record. This court decided parents for privacy and fields in motion to dismiss postures, and it can do the same here. Because the legal question is, what is the scope of the substantive due process right when it comes to parents in the context of schools? And as a general matter, substantive due process is concerned with unjustified compulsion, coercion, prohibition by the state in a way that materially interferes with the parent-child relationship. We don't have any of that here. This court has rejected efforts to constitutionalize line drawing in this arena, and instead, it's articulated a clear rule, which is that parents do not have a due process right to override their school's chosen policies. And again, so the state of California's position is that with regard to six-year- old children, that unless they give their written consent to their parents knowing the gender they would prefer to be called by, and unless the school finds that there's compelling interest that it's contrary to their physical or mental well-being, the parent of that six-year-old has no right to know that the school has directed everyone in the school to identify the child by their chosen gender. I appreciate Your Honor's concern, and I have two responses. The first is that fields is instructive when it comes to the concern about age. There, this court considered a school's decision to administer a survey about sex and sexuality to first-graders, third-graders, and fifth-graders. And this court said, whatever the wisdom of that school's choice, there was no fundamental parental rights implicated, and moreover, to constitutionalize line drawing based on the nature of the parent's objection would be unadministerable. Second, I'll note that we don't have any allegations here about this policy being applied to very young children, to kindergartners, and certainly doing so with a... You don't, you don't dispute that's what the policy says, though. You, you, you agree with your, your colleague who argued just before you that that's what the policy provides. The policy does apply to all students in the district, but to the extent that policymakers are concerned about age, they could draw another line, and they haven't done so here. Or they, or they could write a more neutral policy that, that simply says, for example, in deciding they're going to take into account the best interests of the child, as opposed to there is a presumption that, that without the child's written consent, it's going to remain undisclosed to the parent, absent compelling evidence that, that this is harming the child's physical or mental well-being. Policymakers could choose to approach it that way. I'll note that the way that this policy is designed is consistent with educational best practice as teachers, school psychologists, school social workers, and nurses all told this court in their amicus brief, and... But as Judge Kristen pointed out, we don't have evidence on that because this was the 12B6 stage. That's right. But again, at the 12B6 stage, this, this case can be resolved as a matter of law, both because of the Parents for Privacy clear line about the nature of the substantive due process, right? And if I may, I also want to address the medical treatment issue and why this court can resolve that question as a matter of law. There's simply, it's clear as a matter of law, an incontrovertible fact that respecting a transgender person's name and pronouns is not medical treatment, giving rise to a substantive due process claim. And should there be any doubt on that, this court could look to Tingley versus Ferguson, where the court determined that conversion therapy was a form of medical treatment, where the state regulated it as part of the practice of medicine, and where this court defined medical treatment as what licensed healthcare professionals provide their patients in the course of diagnosis and treatment. Here, of course, the state does not regulate respecting someone's name and pronouns as a form of medical treatment. The court can also look at all of the substantive due process cases, finding that a form of medical care gave rise to a parental interest. I'm sorry, I see my time has expired. May I finish briefly? Yes, of course. And in those cases, the court was focused on inpatient hospitalization for mental illness, medical examinations of children in protective custody, spinal taps, blood draws to diagnose disease. All that is extremely far afield from respecting someone's name and pronouns, which anyone can do and people do every day as a matter of civic decency and respect. Thank you very much. We ask that the court affirm. Thank you. Mr. Dixon. I'll start where the state ended off. The state uses the phrase medical treatment. This is the same type of hand waving that they made in their brief. We don't contend that this is medical treatment. We contend this is psychological treatment. Under Parham, healthcare treatment, whether it is quote unquote medical or psychological, deserves respect and the parental right is triggered. Medical would be things like a shot or a pill. Psychological is obviously treatment on the psyche. The district invokes the line of fields one, saying that parental rights end at the threshold of the schoolhouse door. I would commend your honors to fields two, which is the decision that amended fields one on a petition for rehearing, which explicitly removed that line from the decision. Fields two has to be seen as rejecting the proposition that parental rights end at the threshold of the school door. And of course, that's the case. If a school employs doctors to distribute Adderall to students before class, that's obviously a constitutional violation, despite the fact of being behind the school doors. I'd commend your honors in the shocks to conscience argument to footnote eight of Lewis against County of Sacramento. That footnote explains quite clearly that we're challenging a policy like we are doing here. Fundamental rights analysis, strict scrutiny analysis applies. Shocks to conscience is only applicable to executive action, like in that case, an aggressive police chase. The district argues that a gender dysphoria diagnosis is not required before socially transitioning is performed on children, and that is correct, but that makes it worse. They're performing treatment on children who don't need it. If you give a child a Tylenol, that doesn't stop becoming treatment simply because the child doesn't have the headache. The question is whether this has an impact on the child. Tylenol has the same effect on the child, whether it has a headache, social transitioning has the same impact on the child, whether or not it has gender dysphoria. If there are no further questions, we'll submit. Thank you, Your Honor. All right. Thank you very much, counsel. Regino versus Staley will be submitted.
judges: WARDLAW, CHRISTEN, BENNETT